**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marisol Regalado, | No. CV-22-00211-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Social Security Administration's denial of Plaintiff Marisol Regalado's application for Social Security Disability Insurance Benefits. Regalado filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court has reviewed the briefs and the Administrative Record (Doc. 16, "R."), and now affirms the Administrative Law Judge's ("ALJ") decision.

## I.    BACKGROUND

Regalado applied for disability benefits under Title II of the Social Security Act on October 17, 2018, based on an alleged disability beginning on March 19, 2018. (Doc. 16-3 at 22; R. at 21.) The Social Security Commissioner denied Regalado's application and subsequently denied reconsideration of her application. (R. at 66-82, 84-102.) On December 2, 2020, Regalado appeared before an ALJ for a hearing on her claim. (*Id.* at 45-63.) The ALJ denied her claims on January 19, 2021. (*Id.* at 21-36.) The ALJ's decision became final after the Appeals Council denied Regalado's appeal. (*Id.* at 1-3.) She now seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues the parties raised. Upon considering the medical evidence and opinions, the ALJ evaluated Regalado's disability based on the following severe impairments: right and left knee impairments severe in combination; degenerative disc disease of the lumbar spine; bilateral wrist neuropathy; diabetes mellitus Type 2; major depressive disorder; post-traumatic stress disorder; panic disorder; mild cognitive impairment; and generalized anxiety disorder. (*Id.* at 24.)

The ALJ reviewed the medical evidence and testimony and ultimately concluded that Regalado was not disabled from the alleged disability onset date through the date the of ALJ's most recent decision. (*Id.* at 36.) The ALJ found that Regalado did not have any impairments or combination of impairments that meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 25-27.) Next, the ALJ calculated Regalado's residual functional capacity ("RFC"). [1] The ALJ found that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following: The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs. The claimant can frequently balance, stoop, kneel, crouch, or crawl. The claimant can occasionally reach overhead. The claimant should avoid concentrated exposure to extreme cold and excessive vibration (for example, that of a jackhammer) and to workplace hazards such as unprotected height and dangerous moving machinery (for example, factory-type machinery with an unshielded blade). The [claimant] can perform simple routine tasks and make simple work related decisions.

(*Id.* at 27.) Accordingly, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 35.) These jobs include positions as a Small Product Assembler II, Routing Clerk, and Shipping and

---

[1] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

Receiving Weigher. (*Id.*)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, — U.S. —, 139 S. Ct. 1148, 1157 (2019); *see also Thomas v. CalPortland*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be

1    disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the

2    claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

3    If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the

4    fifth and final step, where the ALJ determines whether the claimant can perform any other

5    work in the national economy based on the claimant's RFC, age, education, and work

6    experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

7    **III.    ANALYSIS**

8        The Court begins its analysis with whether remand is appropriate under 42 U.S.C.

9    § 405(g) and then evaluates the ALJ's treatment of symptom testimony and opinion

10   evidence.

11       **A.    Remand for Additional Evidence**

12       Regalado requests that the Court remand her case because there are "multiple

13   treatment records that contain information relevant to the period at issue [that] were not

14   included in her disability claim file upon development and review at the initial,

15   reconsideration, or hearing levels of review." (Doc. 19 at 12.) The Court may order remand

16   of the case to consider additional evidence, "but only upon a showing that there is new

17   evidence which is material and that there is good cause for the failure to incorporate such

18   evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The new evidence

19   "must bear 'directly and substantially on the matter in dispute.'" *Mayes v. Massanari*, 276

20   F.3d 453, 462 (9th Cir. 2001) (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir.

21   1982)). And a claimant must also establish that there is a "reasonable possibility" that the

22   new evidence would have changed the outcome of the administrative hearing. *Id.*

23       Regalado contends that the treatment record evidence is material because it relates

24   to the period the ALJ reviewed and contains details regarding the treatment of her

25   impairments that the ALJ determined were severe. (Doc. 19 at 13.)  Regalado, however,

26   has not established how the new evidence would change the outcome of the ALJ's decision.

27   Aside from disclosing the mere existence of the records in her briefings, Regalado fails to

28   identify the contents of the records or connect the records to the present matter in any

1  meaningful way. Accordingly, the Court finds Regalado failed to establish that the

2  evidence is material.

3        Even if the Court were to treat the evidence as material, Regalado has failed to

4  establish good cause for failing to present the medical records before receiving an adverse

5  decision. To demonstrate good cause, "a claimant must show that the evidence was

6  unavailable earlier." *Brittain v. Colvin*, No. 3:16-CV-05217-KLS, 2016 WL 4409230, at

7  *2 (W.D. Wash. Aug. 19, 2016) (citing *Mayes*, 276 F.3d at 463). Regalado contends that

8  her prior counsel and the ALJ failed to properly develop the record. (Doc. 19 at 8). But the

9  ALJ provided Regalado's counsel with numerous opportunities to present new evidence

10 and further develop the record. (*See* R. at 48, 63.) And while she asserts that her prior

11 counsel failed to provide the new evidence in the administrative proceedings, Regalado has

12 not established that the records were unavailable at the time of the hearing. Thus, as

13 Regalado has failed to establish good cause, the Court will not remand for the consideration

14 of additional evidence.

15        **B.    Symptom Testimony**

16        An ALJ engages in a two-step analysis when evaluating a claimant's symptom

17 testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must

18 determine whether the claimant has produced objective medical evidence of an underlying

19 impairment. *Id.* Second, unless there is evidence of malingering, the ALJ must provide

20 specific, clear, and convincing reasons for rejecting symptom testimony associated with

21 the underlying impairment. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is

22 the most demanding standard in Social Security cases. *Moore v. Comm'r of Soc. Sec.

23 Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). In making credibility determinations, an ALJ

24 may consider a variety of factors in evaluating symptom testimony including, "[the

25 claimant's] reputation for truthfulness, inconsistencies either in [her] testimony or between

26 [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony

27 from physicians and third parties concerning the nature, severity, and effect of the

28 symptoms of which [she] complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789,

1   792 (9th Cir. 1997).

2       Here, while the ALJ found no evidence of malingering and that Regalado's
3   "impairments could reasonably be expected to cause the alleged symptoms," she also found
4   that Regalado's "statements concerning the intensity, persistence and limiting effects of
5   these symptoms [were] not entirely consistent with the medical evidence and other
6   evidence in the record." (R. at 28.) Accordingly, the ALJ needed to provide specific, clear
7   and convincing reasons for discounting Regalado's symptom testimony.

8       The ALJ noted that Regalado's impairments include osteoarthritis, depression,
9   lumbar disc disease, and degenerative joint disease. (*Id.*) Regalado testified that "she
10  cannot work full time due to body aches, problems with executive functions, short term
11  memory and a lot of movement to decrease pain." (*Id.*) She also testified "that she has to
12  alternat[e] siting and standing due to arthritis. . . ." (*Id.* at 28, 55) Finally, Regalado stated
13  "that depression affects her ability to work . . . [and] that she has cognitive decline and has
14  to take medications." (*Id.* at 28.)

15      The ALJ's decision lists medical evidence that refutes the severity of Regalado's
16  symptom testimony. (*Id.* at 28-31.) As to body pains, the ALJ reasoned that although
17  Regalado was diagnosed with pain in her knees on December 18, 2018, a March 6, 2019
18  record displayed she had a normal range of motion. (*Id.* at 29.) Regarding Regalado's lower
19  back pain, lumbar disc degeneration, and arthritis, the ALJ noted that from November 2018
20  to August 2020 she received treatment for the pain which appeared to have provided
21  significant relief and improvement. (*Id.*)  The ALJ also pointed to a medical record from
22  March 15, 2019 indicating that Regalado reported being "functionally independent as she
23  does housework, drives, and has hobbies including reading and walking." (*Id.* at 30.)
24  Regarding Regalado's mental impairments, the ALJ discussed medical records that show
25  Regalado had normal thought processes, good attention to detail, and good memory and
26  recall. (*Id.* at 30-31.) Similarly, the ALJ pointed to a June 2020 neuropsychological
27  evaluation finding that Regalado had intact cognitive functioning for her age and education.
28  (*Id.* at 31.)

Regalado contends that the ALJ failed to connect specific medical evidence to inconsistencies in her symptom testimony. (Doc. 21 at 6.) But the ALJ highlighted the inconsistencies prior to listing the specific objective medical evidence discussed above. (*See* R. at 26.) For instance, when analyzing Regalado claims that her mental impairments affected her ability to remember and understand, the ALJ compared her symptom testimony with objective medical evidence that Regalado had good memory and recall and ultimately concluded that the impairments would not limit her ability to complete light work. (*Id.* at 26, 30.) The ALJ also considered Regalado's claims that her mental impairments affect her ability to work with others but reasoned that she has never been fired from a job based on her ability to work with others and that she regularly interacted with others during her frequent shopping activities. (*Id.* at 26.) The ALJ found this indicated that she could interact with others without significant issues. (*Id.*) The ALJ also explained that the record demonstrated that Regalado's mental and physical impairments did not prevent her from performing fine movements effectively (*Id.* at 25), completing activities consistent with her RFC (*Id.* at 26), or managing and adapting herself to obtain treatment for her impairments (*Id.* at 27).

The ALJ addressed each of Regalado's alleged impairments by examining objective medical evidence relating to the individual impairments. *See Garrison*, 759 F.3d at 1018 (holding that an ALJ "must rely on examples to show why they do not believe that a claimant is credible"). While the ALJ may not have articulated her reasoning in a section directly after her listing of the objective medical evidence, it is apparent to the Court that the listed evidence directly relates to the inconsistencies the ALJ found in Regalado's symptom testimony. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (finding that it is appropriate for the Court to draw inferences from the ALJ's opinion). And evidence that the ALJ discussed elsewhere in the decision consistently calls into question the accuracy of Regalado's testimony. Thus, the Court finds that the ALJ based her rejection of Regalado's symptom testimony on specific, clear and convincing reasons.

### C.     Medical Opinion Evidence

In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The new regulations apply to claims filed on or after March 27, 2017. *Id.* Here, Regalado filed her application after the effective date. (Doc. 19 at 2.) The Ninth Circuit has addressed the effect of the new regulations, so the Court begins with this issue. *See Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022).

Under the old regulations, "[t]he law in the Ninth Circuit [was] that, although the ALJ must consider all medical opinion evidence, there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians." *Latahotchee v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05668-PHX-DWL, 2021 WL 267909, *4 (D. Ariz. Jan. 27, 2021) (citation omitted). Based on this hierarchy, the Ninth Circuit consistently ruled that an ALJ may only reject an examining physician's opinion by providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

The 2017 regulations provide that "[ALJs] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors [an ALJ will] consider when [evaluating] the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

In *Woods*, the Ninth Circuit held that these revised regulations clearly intended to abrogate its precedent requiring ALJs to provide "specific and legitimate reasons" for

rejecting a treating or examining doctor's opinion. *See Woods*, 32 F.4th at 792. Nonetheless, in so holding, the Ninth Circuit stressed that an ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Regalado contends that the ALJ erred in finding the opinions from the non-examining and examining state agency physician's persuasive. (Doc. 19 at 18.)[2] Regalado first takes issue with the ALJ's treatment of the opinions of the two non-examining doctors, Dr. Bargan and Dr. Naiman. (*Id.*) Despite Regalado's assertion that the ALJ gave weight to Dr. Bargan's opinion, the ALJ found the opinion unpersuasive. (R. at 33.) The ALJ found that while Dr. Bargan may have supported the opinion with a narrative, Dr. Bargan did not consider all the impairment evidence in the record or give much weight to inconsistent medical opinions. (*Id.*) The Court finds that the ALJ did not err in discounting Dr. Bargan's opinion.

Regarding Dr. Naiman's opinion, the ALJ found this opinion was only partially persuasive. (*Id.*) The ALJ noted that Dr. Naiman's assessment was supported by narratives and consistent with the record overall but found that Regalado's shoulder and knee impairments were more consistent with light work, rather than medium work. (*Id.* at 33-34.) In other words, the ALJ found Regalado to be more impaired than Dr. Naiman opined. Thus, if anything, the ALJ's treatment of Dr. Naiman's opinion increased the likelihood of an award of benefits.

Regalado also takes issue with the ALJ's treatment of two examining doctors, Dr. Littlefield and Dr. Cunningham. (Doc. 19 at 18.) Regalado argues that the ALJ erred in relying on these opinions. (*Id.*) The ALJ found Dr. Littlefield's opinion mostly persuasive. (R. at 32.) In weighing the opinion, the ALJ reasoned that it was supported by evidence in the record and was consistent with the evidence available at the time Dr. Littlefield issued

---

[2] The Commissioner argues that the ALJ's treatment of Dr. Morgan's opinion was proper. (Doc. 20 at 16.) The Court does not address this argument because Regalado does not rely on Dr. Morgan's assessment. (Doc. 21 at 7 n.3.)

his report. But the ALJ notes that Dr. Littlefield did not have access to Dr. Knapp's later report demonstrating that Regalado showed a mild cognitive impairment. (*Id.*) Accordingly, the ALJ lessened the persuasiveness of Dr. Littlefield opinion. The Court finds no error in the ALJ's evaluation of Dr. Littlefield's opinion. Regarding Dr. Cunningham's opinion, the ALJ found it persuasive to a limited extent. (*Id.* at 33.) The ALJ noted that Dr. Cunningham supported the opinion by conducting a physical examination. (*Id.*) But the ALJ did not agree with Dr. Cunningham's opinion that Regalado could engage in medium work. (*Id.*) Instead, the ALJ found Regalado impairments to be greater than Dr. Cunningham opined. Again, the ALJ's reasoning as to Dr. Cunningham increased the likelihood of a finding of disability. The Court finds no error in the ALJ's treatment of Dr. Cunningham's opinion.

As remand is not appropriate here, the Court need not address the credit-as-true analysis.

**IV.   CONCLUSION**

Accordingly,

**IT IS ORDERED** affirming the January 19, 2021 decision of the Administrative Law Judge (R. at 21), as upheld by the Appeals Council (R. at 1).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment consistent with this Order and close this case.

Dated this 7th day of March, 2023.

Michael T. Liburdi

Michael T. Liburdi
United States District Judge